**Bonjean Law Group, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
**jennifer@bonjeanlaw.com**

Attorney for Plaintiff

_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**
_____

**STEVEN STADLER**,

      Plaintiff,

**BRIEF IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

     v.    13-cv-2741 (RBK/AMD)

**GLENN ("ANTHONY") ABRAMS, JR. ET AL.**

      Defendants.
_____

## INTRODUCTION

Plaintiff, Steven Stadler, was viciously beaten by defendant officer Glenn Abrams (who was off-duty and in plain-clothes) and Defendant William Moore after he was arrested for breaking into change boxes at a car wash. (Ex. A – Photographs of Plaintiff) Despite the fact that Plaintiff posed no threat to any officer and was not resisting arrest, Defendant John Devlin, an officer with an exceptional internal affairs complaint history for excessive force, jumped into the fracas striking Plaintiff and then directed his K9 partner to attack Plaintiff causing him serious

and permanent injuries. Plaintiff does not dispute that at the time of his arrest he was committing a theft; however, he vehemently disputes that his conduct justified the savage beating he endured. Medical records and photographs of Plaintiff corroborate his claims of being beaten by multiple officers and bitten by a police dog. (Ex. A and Ex. E – Dr. Kirby Expert Report).  All of the named defendant officers admit to using force against Plaintiff but contend that the force was justified. The extent of each officers' participation and culpability is a factual dispute to be resolved by the fact finder. *See, e.g, Smith v. Mensinge*r, 293 F. 3d 641 (3d Cir. 2002)*; Perez v. City of Camden*, 2014 U.S. Dist. LEXIS 132500 (D.N.J. 2014). Accordingly, defendants' motion for summary judgment as to Plaintiff's excessive force claims must be denied

## **FACTUAL BACKGROUND**

On the evening of March 13, 2013, Plaintiff burglarized a car wash located on Atlantic and Albany Avenues after spending a day consuming drugs and alcohol. Plaintiff admitted to entering the car wash where he found a screw driver and hammer and then attempted to pry open two cash boxes located outside in a car port. Unknown to Plaintiff, the car wash was owed by Atlantic City Police Sergeant Greg Voci.

As Plaintiff attempted to pry open one of the cash boxes, a dark-colored SUV pulled up and an individual in dark clothing got out of the car and said, "[w]hat are you doing?" (Ex. B – Deposition of Steven Stadler at pg. 71) The individual did not identify himself as a police officer but Plaintiff later learned that the person was off-duty Atlantic City police officer defendant Glenn Anthony Abrams, Jr. *Id*. at pg. 72-73.

Plaintiff did not respond to Defendant Abrams and began to walk away from the area at a brisk pace. *Id.* at 73. Plaintiff headed towards an alley adjacent to the car wash and dropped the tools he had on his person. *Id*. at 73-74. The same dark SUV pulled into the alley where Plaintiff

was sitting to catch his breath. When Plaintiff saw the SUV, he immediately got up and started walking towards Albany Avenue. Defendant Abrams yelled, "[s]top" but still did not identify himself as a police officer. *Id*. at 75-76. As Plaintiff approached the corner of West End Avenue, he observed a marked police car driving at a slow pace toward him. *Id*. at 77. Defendant Moore who was in uniform exited his car and told Plaintiff to put his hands on top of the hood of the car. *Id*. Plaintiff complied.

Defendant Abrams walked up to the car from behind Plaintiff, swung him around and punched him in the face several times. *Id*. at 82. Plaintiff recalls losing his bearings and being kicked and punched on either side of his face, head and body. *Id*. at 82-83. Plaintiff explained that he deduced that he was being hit by both the plain clothes and uniformed officers because "I was getting punched and kicked on both sides of my body, so I would have to say yes, I was being struck by both police officers." *Id*. at 84.

Plaintiff lost consciousness during the beating but was roused by an unbearable pain to his left thigh. *Id*. at 86. After regaining consciousness, Plaintiff recalled being dragged down the street by a dog that had bitten his upper left thigh. *Id.* at 89. Plaintiff was later transported to the emergency room for medical treatment. Plaintiff was hospitalized at the Atlantic County Justice Facility for almost a month after this brutal attack. (Exhibit F)

## APPLICABLE LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, the individual defendant officers move for summary judge. A grant of summary judgment is appropriate where the moving party has established that there is no genuine dispute of material fact and "the moving party is entitled to judgment as a matter of law." *Hugh v. Butler County Family* YMCA, 418 F. 3d 265, 266-67 (3d Cir. 2005). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable

jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Shuman v. Raritan*, 2016 U.S. Dist. LEXIS 164996, *22 (D.N.J. 2016). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inference are to be drawn in his favor.'" *Id.* citing *Marino v. Indus. Crating Co.,* 358 F. 3d 241, 247 (3d Cir. 2004).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Shuman*, 2016 U.S. Dist. LEXIS 164996 at *23. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Id.* citing *Gleason v. Norwest Mortg., Inc.*, 243 F. 3d 130, 138 (3d Cir. 2001). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Credibility determinations are the province of the factfinder. *Shuman*, 2016 U.S. Dist. LEXIS 164996 at *24.

## ARGUMENT

### I. Genuine Issues of Material Fact Exist As to Whether the Defendant Officers' Use of Force Was Objectively Reasonable.

Claims that police officers used excessive force in an arrest are analyzed under the Fourth Amendment objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. *Curely v. Klem*, 499 F. 3d 199, 203 (3d Cir. 2007). The test of Fourth Amendment reasonableness of force used during the seizure is whether, under the totality of the circumstances, an officer's actions are objectively unreasonable in light

4

of facts and circumstances confronting him, without regard to his underlying intent or motivations. *Graham*, 490 U.S. at 397. *See also, Kopec v. Tate*, 361 F. 3d 772, 776 (3d Cir. 2004). An excessive force claim must be evaluated from the perspective of reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Rivas v. City of Passaic*, 365 F. 3d 181, 198 (3d Cir. 2004).

In assessing whether the use of force was objectively reasonable, courts consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. While reasonableness is often a question for the jury, summary judgment in favor of defendants is appropriate "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances. *Kopec*, 361 F. 3d at 777.

At the outset, all parties agree that Plaintiff was seized for Fourth Amendment purposes. The remaining question is whether the officers' conduct was reasonable. Viewing the facts in the light most favorable to Plaintiff, there is no question that a reasonable jury could conclude that the individual defendant officers used excessive force during the course of Plaintiff's arrest. In fact, according to Plaintiff's police practice and K9 expert, the officers' use of force was unreasonable even crediting the officers' version of events. (Ex. E – Declaration of Vanness H. Bogardus, III at pg. 5-6)

Defendants contend that each officers' conduct was reasonable, relying solely on the officers' self-serving and contested testimony.

**Officer William Moore**

First, Defendants claim that summary judgment should be granted in favor of Defendant Moore, because in his *pro se* complaint, Plaintiff did not name Moore as a defendant. Defs. MSJ at pg. 11. Defendants cite no authority for the proposition that summary judgment is justified when Plaintiff sought and was permitted leave to add a Defendant based on previously unavailable facts. [Doc. No. 45] This argument is frivolous.

Second, Defendants argue that summary judgment in Defendant Moore's favor is justified because "there is simply no support for the allegations against Officer Moore other than Plaintiff's self-serving statements." *See* Defs. MSJ at pg. 11. The summary judgment record belies the Defendants' argument. In addition to Plaintiff's testimony that both Defendant Abrams and Defendant Moore struck him multiple times, Defendant Moore testified that he intervened in the "fight" between Plaintiff and Defendant Abrams. (Exhibit C – Moore Deposition at 96) Defendant Moore explained that as Defendant Abrams and Plaintiff "struggled" on the ground, "I immediately jumped in. I was trying to get him in a wrist lock. That wasn't working [so] I had started giving him knee strikes." *Id*. at pg. 96-97. Defendant Moore testified as follows:

Q: And you delivered knee strikes to him?

A. Correct.

Q. What part of his body did you deliver knee strikes to?

A. If I recall, his left, like his thigh area, and maybe possibly his rib area.

Q. Right here in his rib area?

A. Correct.

Q. Pretty hard knee strikes, right?

A. Yes. *Id*. at 104.

Additionally, both Defendants Abrams and Devlin recount Defendant Moore being involved in the "struggle" with Plaintiff.

Apart from the aforementioned testimony, Defendant Moore completed a use of force report in which he indicated that he used "compliance hold" and "hands/fists" and "knee strikes" on the Plaintiff. (Exhibit D – Moore's UOF Report) In light of the foregoing testimony and other documentary evidence, there is simply no question that a reasonable jury could find that Moore was one of the officers who beat Plaintiff and caused his injuries.

The case of *Smith v. Mensinger*, 293 F. 3d 641 (3d Cir. 2002), is dispositive of this issue. In *Smith*, the defendant brought excessive force claims against a number of correctional officers after he endured a beating at the Pennsylvania State Correctional Facility at Frackville. Several of the individual defendant officers moved for summary judgment, arguing that because Smith was not sure whether those officers directly participated in his beating, Plaintiff could not, as a matter of law, prevail on his excessive force claims. *Id*. at 650. The Third Circuit affirmed the district court's denial of summary judgment, noting that it was undisputed that the officers were present when Plaintiff was beaten and that Plaintiff's testimony that he could not see those defendants during the beating "neither negates their involvement nor their liability as a matter of law." *Id*.

This Court relied on *Smith* in reaching a similar conclusion in *Perez v. City of Camden*, 2014 U.S. Dist. LEXIS 132500 (D.N.J. 2014). There, the defendants moved for summary judgment arguing, in part, that because Plaintiff was unable to identify which defendant officers used force against him or identify the type of force used, his claims of excessive force must be dismissed. *Id*. at *27. This Court disagreed, finding that "the fact that plaintiffs cannot each

identify which individual officer tackled, punched or kicked them in every circumstance is not fatal to Plaintiff's claim." Your Honor wrote:

> There is no dispute that all four of the Officers were present during the arrests of the Plaintiffs, each Plaintiff has alleged acts of excessive force committed by at least one of the Officers present, and each Officer admits to using some force to arrest at least one or all of the Plaintiffs. The extent of each Defendant's participation and culpability is factual dispute to be resolved by the fact finder. *Id.* at *27-28.

Similarly, here, there is no dispute that Defendant Moore was one of two officers who arrested Plaintiff and engaged in a "struggle" with him prior to Defendant Devlin releasing his K9 to "apprehend" the Plaintiff. Defendant Moore admitted that he used force both at his deposition and in a UOF report. Thus, the extent of Defendant Moore's participation and culpability is a factual dispute to be resolved by the fact finder.

**Officer Abrams**

As he must, Defendant Abrams fully admits to using force against Plaintiff. However, Defendants argue that the use of force was justified because Plaintiff "ran" from Defendant Abrams. Defs. MSJ at pg. 13. Defendant Abrams' argument has no place in a motion for a summary judgment.

It is undisputed that Defendant Abrams was off-duty and dressed in a street clothes when he approached Plaintiff. The parties hotly dispute whether Defendant Abrams identified himself as a police officer. Plaintiff testified that after walking away from Abrams (who he did not know was a police officer), he was stopped by a uniformed police officer, Defendant Moore, and put his hands on the roof of Defendant Moore's car as ordered. Defendant Abrams approached from behind him, spun him around and punched him in the face. (Exhibit A at pg. 82) Plaintiff testified that he was complying with Defendant Moore's orders and did nothing to provoke Defendant Abrams' vicious assault. After punching Plaintiff in the face, causing his glasses to

8

break and fly off of his face, Defendant Abrams and Moore pummeled Plaintiff until he lost consciousness. Exhibit A at pgs. 85-86.

Contrary to the Defendants argument, Plaintiff's injuries fully support his version of the events. Incredibly, Defendants argue that "[n]othing supports [Plaintiff's] allegations, as the "records indicate Plaintiff was conscious, responsive, and oriented to person, place, and time." Defts. MSJ at pg. 13. Defendants ignore the graphic photos of Plaintiff at the hospital and his booking photos that clearly show he suffered a serious beat down. (Exhibit A) Moreover, as detailed in Dr. Kirby's expert report, Plaintiff was treated at the ER for "facial contusions, closed head injury . . . and a left black eye." (Exhibit E at pg. 3). Moreover, Plaintiff spent nearly a month in the medical division of the Atlantic County Justice facility after being released from the ER. *Id*. at 4.

Significantly, photographs of Defendant Abrams reveal no injuries to his face but do reveal a cut and severe swelling to his knuckles – consistent with repeatedly striking someone with one's fists. (Exhibit F – Photos of Defendant Abrams)

In closing, the summary judgment record strongly supports Plaintiff's version of events, but regardless, the facts are in dispute which precludes an order of summary judgment in Abrams' favor.

**Defendant Devlin**

It is undisputed that Plaintiff suffered serious dog bite injuries as a result of Defendant Devlin releasing his K9 partner on Plaintiff and directing the dog to bite him. Plaintiff's dog bite wounds were stapled shut and Plaintiff spent nearly a month in the medical ward of the Atlantic County Justice Facility receiving treatment for his injuries. Defendant Devlin admitted in his UOF report that he used "compliance holds" and his "hands/fists" against the Plaintiff in addition

9

to deploying his canine on the Plaintiff. (Exhibit D – Devlin's UOF report) Notwithstanding these uncontested facts, Defendant Devlin argues that summary judgment should be granted in his favor because Plaintiff's allegations are "outlandish" and an "insult to Officer Devlin and the entire law enforcement community." Deft. MSJ at 12.

The only thing outlandish is Defendants' argument and Defendant Devlin's claims that he needed to deploy his attack dog to maul a man who was being restrained by two other officers. As Plaintiff's expert writes: "[t]he canine bites suffered by Mr. Stadler on March 13, 2013 were unreasonable, unnecessary and excessive force. The bites did not comport with generally accepted standards of the use of physical force in law enforcement. . . [i]t is my opinion that that the use of unreasonable and excessive force under these circumstances was intentional and exercised with deliberate and reckless disregard for the safety of other ACPD officers and Mr. Stadler's life." (Exhibit D at 5-6)

At bottom, whether Defendant Devlin's use of force was reasonable is a question for the jury and Defendants motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, the individual defendant officers' motion for summary judgment as to Plaintiff's excessive force claims must be denied.

Respectfully Submitted,

/s/JENNIFER BONJEAN