**Bonjean Law Group, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
jennifer@bonjeanlaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CAMDEN VICINAGE

**STEVEN STADLER**,

    Plaintiff,

  v.

**CITY OF ATLANTIC CITY; ACPD OFFICER WILLIAM MOORE; ACPD OFFICER GLENN ANTHONY ABRAMS; ACPD OFFICER JOHN DEVLIN.**

    Defendants.

13-cv-02741

## MISCELLANEOUS MOTIONS *IN LIMINE*

**NOW COMES**, Plaintiff by and through his counsel and files a number of motions *in limine* out of an abundance of caution to prevent potential prejudice to the Plaintiff. Additionally, two requests are as a result of matters that have arisen in the last few days. Respectfully, Plaintiff moves this Court to enter an order: (1) precluding defendants from suggesting that Plaintiff was responsible for a burglary that occurred at the car wash on March 9, 2013; (2) precluding defendants from playing video surveillance of Plaintiff entering the car wash on March 13, 2013 and attempting to access the change box in the car bay; (3) precluding defendants from opening on, eliciting testimony on direct of cross, or otherwise apprising the jury of the fact that Plaintiff's

amended complaint originally named AtlantiCare Regional medical center and the emergency room treating physician as defendants in this matter; (4) precluding Eileen LaBarre's (Plaintiff's public defender during the criminal proceedings) testimony; and (5) precluding defendants from using a judgment of conviction against Plaintiff that was produced for the first time today.

**A.     March 9, 2013 Incident**

1.     Plaintiff has no reason to believe that defense counsel would brazenly attempt to attribute an earlier burglary incident at the car wash to Plaintiff, but on the off-chance counsel attempts to do so, Plaintiff moves to bar such argument or suggestion since no evidence supports such a claim, and any such assertion is not relevant to what occurred on March 13, 2013.

2.     Former ACPD sergeant Greg Voci runs a self-automated car wash on Albany ave. that is the site of the burglary that Plaintiff committed on March 13, 2013.

3.     On March 12, 2013, Mr. Voci apparently discovered that someone had broken into his car wash on March 9, 2013. The car wash had 13 surveillance cameras installed on the premises and upon reviewing the video footage on March 12, 2013, Mr. Voci observed the burglar in his establishment on March 9, 2013.

4.     On March 12, 2013, ACPD officers responded to the car wash and obtained the video surveillance from the burglary that occurred on March 9, 2013. From that video surveillance, a number of still photos were taken and a BOLO was prepared that is attached as Exhibit C. The still photos were downloaded to a disc along with the original video footage and entered into evidence.

5.     Plaintiff has testified that on March 13, 2013 he was walking home when he decided to burglarize the car wash and break into a change box in the car wash bays. After retrieving tools from the interior of the car wash, he entered a car bay and attempted to pry open

the cash boxes when he was interrupted by off-duty police officer Abrams.

6. Video footage was retrieved from the March 13, 2013 incident and shows Plaintiff inside the car bay attempting to access the change box.

7. After the March 13, 2013, Mr. Voci swore out a complaint warrant also charging Plaintiff with the burglary that occurred on March 9, 2013. Plaintiff was charged by way of indictment with committing the March 9, 2013 burglary after defendant Abrams gave the following grand jury testimony:

> Q. After this incident occurred, the defendant was taken into custody. There was an investigation concerning the fact that this car wash had been burglarized on March 9, 2013, correct?
>
> A. Correct.
>
> Q. So the incident took place, the incident you were involved in, took place on March 13, correct?
>
> A. Correct.
>
> Q. So, it was a few days earlier it had been burglarized?
>
> A. Yes.
>
> Q. And at that time did officers or colleagues of yours at the Atlantic City Police Department review security surveillance from the March 9th burglary?
>
> A. Yes.
>
> Q. Were the able to confirm that it was, in fact, Mr. Stadler, the same person that you had taken into custody who had burglarized the car wash on March 9th?
> A. Yes.

8. Although Plaintiff was charged with burglarizing the car wash on March 9, 2013 based on this grand jury testimony, those burglary charges were dismissed. Critically, Mr. Voci admitted during his deposition in this case that he does *not* know who

3

burglarized the car wash on March 9, 2013. Indeed, defendants have failed to offer a shred of evidence demonstrating that Plaintiff was the person who burglarized the car was on March 9, 2013 – other than false testimony from defendant Abrams.

9. Furthermore, Mr. Voci and the City of Atlantic City have failed to produce any video surveillance of the video footage from the March 9, 2013. The City produced a disc of still photos from the video surveillance but despite numerous requests have failed to ever produce working video surveillance.

10. Accordingly, Plaintiff now seeks to preclude the defense from suggesting in any manner that Plaintiff was responsible for the March 9, 2013. Defendants have no witnesses who will testify that Plaintiff is responsible for that burglary. Indeed, the fact that a burglary occurred on March 9, 2013 is only minimally relevant to the incident that occurred on March 13, 2013.

11. Plaintiff does not object to the defendants putting in evidence that a burglary occurred at the car wash on March 9, 2013 as Plaintiff concedes that it may be relevant to the overall narrative and Abrams' state of mind when he arrived at the car wash.

12. But Plaintiff fears that defense counsel may tell the jury during opening statement that Plaintiff was responsible for the burglary without a good faith basis to state as much and without any evidence to show that to be true. Accordingly, Plaintiff seeks an order from this court precluding the any suggestion by the defendants that Plaintiff is responsible for the March 9, 2013 incident.

**B.** **Video Surveillance on March 13, 2013 that Precedes defendant Abrams' Arrival on Scene**

13. Plaintiff seeks to bar the defense from showing video surveillance of Plaintiff burglarizing Mr. Voci's car wash on March 13, 2013 during the period of time that precedes defendant Abrams arrival on the scene. Plaintiff admits to entering the car wash and taking tools

4

from the establishment. He further admits that he attempted to access a cash box in one of the car bays. There is simply no purpose in showing Plaintiff actually committing the crime that he fully admits to and that precedes defendant Abrams' arrival on scene.

14. Mr. Voci's car wash had 13 separate video surveillance cameras that were all fully operable to the best of his knowledge on March 13, 2013. However, ACPD officers only retrieved the footage from seven of those cameras. One of those camera angles depict Plaintiff entering the car wash and wandering in and out for a period of time and removing tools from the premises. Another one of the angles captures Plaintiff attempting to break into the cash box in one of the car bays.

15. The end of the video surveillance depicts Abrams arrival on scene in his SUV at approximately 22:00 (10:00 p.m.) (camera 7) One camera angle catches Plaintiff jogging away from the property at roughly the same time defendant Abrams pulls his SUV in front of the car wash. (camera 13) Plaintiff has no objection to introduction of that particular video surveillance, but objects to the introduction of any footage that precedes defendant Abrams' arrival on scene.

16. This footage has absolutely no relevance to the underlying claims and would serve only to unnecessarily prejudice Plaintiff in the eyes of the jury and make this case about the burglary to which he already pled guilty.

17. Because any probative value of watching 20 minutes of Plaintiff walking in and out of the car wash retrieving tools and attempting to unsuccessfully break into a cash box is substantially outweighed by the prejudicial effect of showing the jury this footage, Plaintiff requests that this Court enter an order prohibiting defendants from showing this video surveillance.

**C.     Evidence That AtlantiCare And The Treating Physicians Were Originally Named as Defendants In Plaintiff's Amended Complaint.**

18.     On April 29, 2013, Plaintiff filed a *pro se* Complaint alleging excessive force against defendants Abrams and Devlin shortly after the March 13, 2013 incident that left him seriously injured. His motions for the appointment of *pro bono* counsel were denied.

19.     On January 28, 2014, undersigned counsel filed an appearance in this matter, but was unable to meet with Plaintiff to discuss the case until August 29, 2014, because Plaintiff was undergoing intensive drug treatment at the "Integrity House" pursuant to the plea agreement he entered into in connection with this case.

20.     On September 10, 2014, Plaintiff, through counsel, filed a motion to amend the Complaint to add certain parties, including AtlantiCare Medical Center and the ER doctor who treated Plaintiff alleging that Plaintiff's injuries were exacerbated by the doctor's premature discharge of Plaintiff.

21.     However, after consulting with medical experts, Plaintiff promptly (within three months) voluntarily dismissed AtlantiCare and the treating physician from the case after learning that Plaintiff's permanent injuries were the direct result of the K9 bites and not any negligence care he received.

22.     Defendants have developed no evidence showing that Plaintiff's permanent injuries were the result of medical malpractice. Indeed, their own expert agreed that the injuries were caused by the dog bites.

23.     Accordingly, Plaintiff seeks an order precluding the defense from eliciting testimony from any witness that Plaintiff's amended complaint originally named AtlantiCare and the treating doctor or to otherwise attempt to suggest that Plaintiff's injuries were caused by medical malpractice. Such evidence has no relevance to the case and defendants have no good

faith basis to make such an argument. Indeed, the reason Plaintiff promptly dismissed the medical defendants from the case was precisely because the claims did not have merit.

**D.    Eileen LaBarre's Testimony**

24.    After Plaintiff was arrested and charged for a litany of offenses, he was detained at the Atlantic County Jail and assigned a public defender Eileen LaBarre, to represent him on the criminal charges.

25.    Defendants have subpoenaed Ms. LaBarre to testify at trial. Plaintiff moves to bar Ms. LaBarre's testimony to the extent that it calls for attorney-client privileged communications and any testimony regarding her practice or habits when representing accused individuals.

26.    Plaintiff entered into a plea agreement whereby he pled guilty to one count of burglary and one count of resisting arrest (as to Defendant Devlin). During his change of plea hearing, the following colloquy occurred with respect to the resisting charge:

> Q.    Now, let's talk about the offenses, sir. Count 3 alleges that on March 13, 2013, that you were in Atlantic City, is that true?
>
> A.    Yes.
>
> Q.    Where in Atlantic City were you when you committing this resisting offense?
>
> A.    It was Albany Avenue.
>
> Q.    Did you there and then come into contact with Officer Devlin of the Atlantic City Police Department?
>
> A.    Yes, sir.
>
> Q.    Was he in uniform at the time?
>
> A.    Yes, sir.
>
> Q.    You knew him to be a police officer?
>
> A.    Yes.

7

> Q. And did you purposefully prevent him from arresting you by using physical force, threats or violence?
>
> A. Yes.
>
> Q. What did you do, sir?
>
> A. I resisted; I pushed away; I tried to run.
>
> Q. Okay. And as a result of which you agree and admit that you're guilty of this offense?
>
> A. Yes, sir.

27. During his deposition, Plaintiff testified that although he pled guilty to one count of resisting arrest, he did not believe that he resisted arrest and pled guilty to that count because it was a condition of his plea agreement. During examination by counsel for defendants the following exchange occurred:

> Q. Page nine. The question by the judge. And did you purposefully prevent him from arresting you by using physical force, threats, or violence?
>
> Answer: Yes.
> And that was on December 6, 2013.
> Do you recall giving that answer?
>
> A. Yes.
>
> Q. On December --
>
> A. By advice of my attorney.
>
> Q. On December 6, 2013 when you gave that answer, was it true?
>
> A. Can you repeat that? (Designated question is read)
>
> THE WITNESS: No, it wasn't.
>
> BY MS. RILEY:
>
> Q. So you lied?

      A.      No, I didn't lie. I was under advice of my attorney who told me this is how you have to answer in order to get this plea agreement to get help for yourself. Is the statement – it's not yes, I didn't resist, I didn't use any physical force, I didn't use any threats and I didn't use violence. I had to take that plea, the resisting arrest and this part, it was under advice of my attorney.

      Q.      You were asked the question on December 6, 2013 in follow-up to that last question, what did you do, sir?

      Answer:      I resisted, I pushed away; I tried to run.

      A.      That was after the fact of me getting beat, hit. I was trying to get out of the way. If that's what you want to call resisting and using physical force or threats or violence, then so be it. I mean I was being hit multiple times by multiple officers. We can go back and forth on this all day long. Did I use – did I resist? No. Were they kicking the shit out of me? Yes. Did I put up my hands to try to protect myself? Maybe. It happened so fast and so quick, I didn't know what to do.

      Q.      Are you done?

      A.      Yes.

      Q.      When your attorney asked you that question earlier, you said you did not resist arrest. Isn't that true?

      A.      Yes.

      Q.      And when you attorney asked you that question earlier about whether you pushed away, you said no, right?

      MS. BONJEAN:      Objection, He did not say that. Objection.

      THE WITNESS:      I don't think I did say that.

      MS. BONJEAN:      He explained what he meant by pushed away.

      Q.      How did you push away?

      A.      Again, we're going over the same question, Miss.

      Q.      The question is still there.

      A.      Pushed away. Okay. I don't know how to explain it to you any better. When you're getting hit, your automatic defense mechanism goes up where you want to protect yourself. If I pushed him in any kind of way, it wasn't purposefully. I was defending myself or trying to defend myself from multiple

9

officers. I can't answer this any other way.

28. As a result of this testimony, defendants sought to depose Ms. LaBarre. Neither Plaintiff nor Ms. LaBarre moved to quash the subpoena but undersigned counsel informed defense counsel that Plaintiff was not waiving his attorney-client privilege and expected Ms. LaBarre to invoke the attorney-client privilege in response to questions specifically about her communications with Plaintiff.

29. On September 22, 2015, defendants filed a motion to compel the deposition of Eileen LaBarre. [Doc. 114] Judge Donio denied the motion without prejudice observing that Ms. LaBarre had not refused to sit for a deposition and that any objection to the scope of her testimony or assertion of the attorney-client privilege was premature. [Doc. 118] During oral argument, Judge Donio suggested that if Ms. LaBarre asserts the privilege and defendants believe that Plaintiff had waived the privilege, the matter could be re-raised by motion *after* Ms. LaBarre's deposition.

30. Ms. LaBarre was deposed on November 13, 2015. (Exhibit B – Deposition of Eileen LaBarre) Defense counsel questioned Ms. LaBarre about a range of matters, including what her habit was when she was assigned a case, and specifically what her *routine* was when she reviewed a judiciary plea form with a client and prepared them to enter into a plea. After answering some of the questions, Ms. LaBarre through her counsel objected on attorney-client privilege grounds since the questions called for answers that required her to reveal information about former clients generally.

31. Defense counsel then began questioning Ms. LaBarre specifically about her interactions with Plaintiff. Ms. LaBarre, through her counsel, asserted attorney-client privilege to the vast majority of those questions.

32. After Ms. LaBarre's deposition, defendants filed no motions arguing that Plaintiff had waived his attorney-client privilege and that Ms. LaBarre should be forced to answer questions about her communications with Plaintiff.

33. Defendants now seek to present Ms. Labarre's testimony at trial. Plaintiff objects to her testimony to the extent that defendants seek to elicit testimony from Ms. LaBarre about her normal practices as a public defender. Such testimony is not admissible pursuant to Fed. R. Civ. P. 406 since Ms. LaBarre's practices when representing hundreds of indigent clients is not sufficiently specific or particularized. Before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere "tendency" to act in a given manner, but rather, conduct that is "semi-automatic" in nature. *See Waters v. Genesis Health Ctr.*, 2005 U.S. Dist. LEXIS 10222, *8 (E.D. Pa. 2005). Because Ms. LaBarre offered no testimony about her routines as a public defender that would amount to conduct that is "semi-automatic," this type of testimony is inadmissible pursuant to Fed. R. Civ. P. 406.

34. Plaintiff further objects to the extent that defendants seek to force Ms. LaBarre to assert the attorney-client privilege before the jury. Such a tactic would only be used to attempt to have the jury draw a negative (and unfair) inference from the proper assertion of a constitutional right.

35. To the extent that defendants believe that Plaintiff waived his attorney-client privilege during his deposition, they failed to timely make that argument so that a pre-trial ruling could be made and the parties could engage in discovery on the issue. None of the parties have any idea what Ms. LaBarre would testify to if forced to reveal attorney-client communications. Discovery closed long ago. Accordingly, to the extent that defendants are seeking to question Ms.

LaBarre about attorney-client communications, this Court should enter an order precluding that line of questioning.

36. Critically, undersigned counsel received a call from Ms. LaBarre's attorney on Friday, and he indicated that Ms. LaBarre will move to quash the subpoena if the parties cannot reach a resolution on the issue.

**E.     Certified Judgments of Conviction Produced Today.**

37. Plaintiff moves to bar the introduction of any certified judgments of conviction that were produced today.

38. Plaintiff relapsed in June 2016 and was arrested in connection with a number of charges. All parties were aware that Plaintiff had been arrested in July 2016 and defendants subpoenaed all documents connected to that arrest. Plaintiff later entered into a plea agreement that resulted in him entering another long-term drug treatment facility. Defendants have not produced any documents in connection with that plea agreement.

39. Today, for the first time, defendants forwarded to undersigned counsel certified statements of conviction revealing that Plaintiff pled guilty to a burglary and a 4th degree resisting arrest, a disorderly persons offense.

40. Plaintiff objects to the 11th-hour production of these documents.

## **CONCLUSION**

11. In conclusion, Plaintiff respectfully requests an order from Court precluding the following: (1) any suggestion by the defense that Plaintiff was responsible for the burglary at the car wash on March 9, 2013; (2) video surveillance from the car wash on March 13, 2013 that precedes defendant Abrams' arrival to the scene; (3) reference to the fact that AtlantiCare and the treating physician was originally named as defendants in Plaintiff's amended complaint; (4)

Eileen LaBarre's testimony; and (5) the belatedly produced convictions of judgment.

Respectfully Submitted,

/s/JENNIFER BONJEAN