**Bonjean Law Group, PLLC**
1000 Dean St., Ste. 422
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
Fax: (718) 230-0582
jennifer@bonjeanlaw.com

                                                                    Attorney for Plaintiff

UNITED STATES DISTRICT
COURT DISTRICT OF NEW
JERSEY CAMDEN VICINAGE

**STEVEN STADLER**,

        Plaintiff,

  v.                                                                                       13-cv-02741

**CITY OF ATLANTIC CITY; ACPD OFFICER WILLIAM MOORE; ACPD OFFICER GLENN ANTHONY ABRAMS; ACPD OFFICER JOHN DEVLIN.**

        Defendants.

**MOTION *IN LIMINE* FOR AN ORDER PERMITTING PLAINTIFF TO INTRODUCE EVIDENCE RELATED TO DEFENDANT MOORE'S INTERNAL AFFAIRS COMPLAINT HISTORY[1]**

    **NOW COMES**, Plaintiff by and through his counsel and respectfully moves this Court to

enter an order permitting the introduction of evidence related to the internal affairs history of

---

[1] To avoid confusion, this motion *in limine* is devoted solely to Plaintiff's intent to admit evidence bearing on defendant Moore's IA history. Plaintiff has already filed a separate motion *in limine* as to defendant Abrams. Furthermore, this motion should not be construed as the sum total of evidence Plaintiff intends to introduce related to the internal affairs histories of non-defendant officers that bear on the City's *de facto* policies and practices. Plaintiff will present significant IA evidence relevant to prove Plaintiff's *Monell* theories of liability but since defendants voiced concern about prejudice to the individual defendant officers, Plaintiff has pro-actively identified internal affairs evidence specific to the named defendant officers in this case that he intends to produce at trial to tee up potential objections that may arise at trial.

defendant Moore. As set out in detail below, evidence regarding 's internal affairs history is relevant for a number of reasons and is not offered for propensity purposes or to show that because Moore acted badly in the past he is likely to have acted badly in this case. Plaintiff has done his best to identify in advance evidence that may bear on defendant Moore's complaint history but reserves the right to introduce other evidence concerning Moore's complaint history previously identified in the JFPO that becomes relevant through the course of trial.

**A.     Evidence Related to the City's Failure to Implement an Early Warning System and Mandated Risk Management Protocols.**

1.     First, as set forth in Plaintiff's Complaint and as was litigating extensively during summary judgment motion practice, Plaintiff intends to present evidence against the Defendant City of Atlantic City showing that despite what its written internal affairs policy states, Atlantic City failed to implement any meaningful Early Warning System ("EWS") as required by the Attorney General guidelines. Specifically, Plaintiff will show that although Atlantic City "counted" internal affairs complaints, it did nothing to identify patterns among its officers who triggered the EWS. In short, Plaintiff will show that Atlantic City's EWS was a fraud and served no other purpose than to conceal officer misconduct and mislead accreditors into believing that one existed.

2.     Plaintiff will introduce evidence to prove this point in a number of ways including by showing that Defendant Moore triggered the Early Warning System ("EWS") in 2012 but never received any additional monitoring, supervision, reassignment, or remedial training as a result of triggering the system. Indeed, defendant Moore will testify that he was unaware that he had ever triggered the EWS and did not even know that Atlantic City had an EWS until 2013. su

4.     Similarly, Plaintiff intends to introduce evidence that between 2007 and 2013, a

pattern of complaints alleging excessive force was obvious from defendant Moore's complaint history but that the City did nothing to address it – again in direct contradiction of its own policies, the AG policies, and national standards for risk management. In his short time on the force, Moore accumulated six interal affairs complaints for excessive force that was never addressed by the department. The failure of the City to address these obvious warning signs is strong evidence of deliberate indifference of the harm that may follow from an officer who demonstrates a pattern of using excessive force.

5. To be clear, this evidence is not being introduced as propensity evidence against Moore but rather is being offered as evidence against the City of Atlantic City for three distinct purposes: (1) the evidence supports Plaintiff's claim that the City failed to supervise its officers, including defendant Moore when it did nothing to respond to Moore triggering the EWS and accumulating a significant number of excessive force complaints without any response by ACPD; (2) the evidence supports Plaintiff's claim that the City has a *de facto* policy of encouraging the use of excessive force among its force because it failed take any meaningful action in response to Moore's accumulation of a significant internal affairs' history for excessive force; and (3) the evidence supports Plaintiff's claim that the City's internal affairs function existed in name only and did not operate in accordance with its own policies or national norms.

6. Defendant Moore will unquestionably respond by pointing out that he has never had an excessive force sustained against him. But this misses the point. Defendant Moore could have been exonerated of every civilian complaint made against him; it doesn't change the fact that the City failed to respond to Moore's complaint history in accordance with its policies and with national norms. It is the City's response or lack thereof that demonstrates its deliberate indifference to the warning signs that arguably led to Plaintiff's injuries.

7.      Accordingly, this evidence is clearly admissible for non-propensity reasons. Any potential prejudice to the defendant can be cured by limiting instructions from this Court.

**B.      Internal Affairs Investigation 07-095**

8.      As set out in detail in Plaintiff's motion to admit evidence of defendant Devlin's complaint history, Plaintigg Plaintiff intends to produce evidence related to internal affairs investigation 07-095 as evidence probative of how the City fails to conduct meaningful investigations against its officers, particularly when the allegations are criminal in nature. This internal affairs investigation is also highly probative on how the internal affairs functions fails to respond to serious incidences with remedial training for officers demonstrate a dire need for it.

9.      Internal affairs complaint 07-095 involved the death of Justin Millet who was allegedly fleeing from defendants Devlin and Moore after exiting the Tropicana Casino and Hotel in an intoxicated. As argued in Devlin's motion, this IA complaint was classified only as "performance of duty." This extremely serious incident underwent only the most superficial investigations by internal affairs. The IA investigation shows that no civilian witnesses were interviewed and the file contains no photographs of the police officers that would serve to corroborate their allegations that the victim had assaulted them. Importantly, the file is devoid of video surveillance that was surely available from Tropicana.

10.     The investigation should have been treated as a homicide investigation, and even if the evidence was insufficient to show that defendants Devlin and Moore intentionally killed Mr. Millet, this death was totally unavoidable if Devlin and Moore had responded differently to the conduct of a clearly intoxicated person. By Devlin and Moore's own admissions, they exacerbated a potentially volatile situation by pushing and antagonizing a group of drunk patrons who were leaving the premises. Had they responded by de-escalating the situation rather than escalating, this

tragedy would likely not have occurred.

11. Atlantic City cleared Devlin and Moore from any wrongdoing declaring, "there is no indication in any reports or videotape that show either officer Moore or Devlin did anything wrong." Atlantic City, minimally, had an obligation to subject Devlin and Moore to remedial training on how to de-escalate the situation so as to keep *everyone* safe. Atlantic City's failure to take any action in response to this serious event other to perfunctorily clear the officers is highly probative evidence on the issue of whether its IA function is a "sham."

**C.      Internal Affairs Investigations 09-151**

12. Plaintiff intends to confront defendant Moore about an off-duty incident alleging excessive force. While off-duty defendant Moore maced and arrested an individual who had gotten into an altercation with Moore's borther. The complaint resulted in a sustained finding against defendant Moore since he failed to submit a use of force report and failed to appear for court that resulted in the dismissal of charges against the accused for want of prosecution.

13. Plaintiff does not seek to cross-examine Moore speficially about the incident but about his untruthfulness during the internal affairs investigation. During his deposition, defendant Moore downplayed the incident, claiming that the sustained finding was simply the result of an oversight. The IA investigator reached a different conclusion, concluding that defendant Moore had been purposefully deceptive during the IA investigation and had lied about whether he received notifications to appear in court.

14. Critically, this IA investigation is further relevant to show that internal affairs is perfectly capable of taking an IA complaint seriously when it involves allegations related to adminstraitive duties but refuses to give the same care and consideration to civilian's complaints.

## **CONCLUSION**

15.     In conclusion, Plaintiff respectfully requests an order from Court permitting Plaintiff to introduce evidence concerning defendant Moore's IA history as set out fully above.

Respectfully Submitted,

/s/JENNIFER BONJEAN