**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| Steven M. STADLER, | : | |
| | : | |
| Plaintiff, | : | Civil No. 13-2741 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| Glenn ABRAMS, JR., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff's Motion for Attorney Fees. (ECF No. 272). After prevailing at trial on his claims against the City of Atlantic City and Officer John A. Devlin, but not against Officers Glenn Abrams, Jr. or William Moore, Plaintiff now seeks attorneys' fees pursuant to 42 U.S.C. § 1988. As we explain below, Plaintiff is awarded $678,863.97 in attorneys' fees as calculated by the lodestar and a 10% reduction for limited success. Plaintiff may also submit to the Clerk of Court invoices for the items this Court has deemed taxable or recoverable as "expenses" under § 1988, pursuant to L. Civ. R. 54.1.

## I.    BACKGROUND

Steven Stadler first filed a *pro se* complaint on April 29, 2013, brought under the auspices of 28 U.S.C. § 1983. He alleged that Glenn Abrams, Jr. and John A. Devlin used excessive force—specifically, that they used a dog named K-9 Clancy to maul him—when they arrested Stadler after he had burglarized a car wash coin-box. After numerous attempts to acquire counsel, he retained the services of the Bonjean Law Group and was represented by Jennifer Bonjean, a civil rights

1

attorney based out of Brooklyn. Plaintiff was also represented by Ashley Cohen, an associate of the firm, and was assisted by Stacy Bagaloo, a paralegal. After retaining counsel, Stadler's complaint was amended to include a claim of excessive force against officer William Moore, also on the scene of the incident, as well as a claim of municipal liability against the City of Atlantic City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

Nearly five years later, a jury found that Officer Devlin, handler of K-9 Clancy, used excessive force against Steven Stadler and that an official policy, practice, or custom of Atlantic City caused the violation of Stadler's right to be free from excessive force. The jury awarded Plaintiff with damages: $500.00 against Officer Devlin and $300,000 against Atlantic City. The jury found no liability on the part of Officers Abrams and Moore.

Now Plaintiff seeks attorneys' fees for his counsel, pursuant to 42 U.S.C. § 1988. A total of 2,126.16 hours were expended on this matter. Ms. Bonjean billed 1,105.59 hours at $495 an hour, Ms. Cohen billed 848.82 hours at $250 an hour, and their paralegal, Stacy Bagaloo, has not certified the sum she billed but it appears Ms. Bagaloo devoted 171.75 hours to this matter at a rate of $125 an hour. By Plaintiff's reckoning, this totals $780,940.80. Together with costs of $148,772.38, Plaintiff requests a sum of $929,713.18.

The Court held oral arguments on the fee application on Monday, July 16, 2018, where Defendants presented their objections, summarized below.

## II.   STANDARD

Section 1988 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 547 (2010). The statute "does not explain what Congress meant by a 'reasonable'

fee, and therefore the task of identifying an appropriate methodology for determining fees was left for the courts." *Perdue*, 559 U.S. at 550.

The lodestar method "is not perfect," but "it has several important virtues." *Id.* First, in accordance with the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S at 550. The method is readily administrable, *see City of Burlington v. Dague*, 505 U.S. 557, 566 (1992), and "objective," *Hensley v. Eckerhart*, 535 U.S. 424, 433 (1983). It "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue*, 559 U.S at 550.

A "reasonable fee" under the lodestar approach is one that is "sufficient to induce a capable attorney to undertake representation of a meritorious civil rights case." *Id.* at 552–53. A reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys. *Id.* The lodestar method yields a fee that is "presumptively sufficient" to achieve this objective. *Id.* at 552. The method includes "most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.*

The starting point for this Court's determination of reasonable attorney's fees is calculation of the lodestar amount, which is "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Penn. Env't Def. Found. v. CanonMcMill*, 152 F.3d 228, 231 (3d Cir. 1998) (citing *Hensley*, 461 U.S. at 433). There are two components to the reasonable fee analysis: the time expended, and the rate charged. When taken together, the "lodestar" is the presumptively reasonable fee. *Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New*

*Jersey*, 297 F.3d 253, 265 n.5 (3d Cir. 2002). Step one in calculating the lodestar is determining whether the number of hours expended were reasonable. Step two evaluates the requested hourly rate, which must be reasonable. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. *Blum*, 465 U.S. at 895; *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The party seeking attorney's fees bears the burden to prove the reasonableness of the fee request. *Rode*, 892 F.2d at 1183. Courts may not make any findings of reasonableness based on a generalized sense of appropriateness but must instead rely on the record. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001). "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D. Manville Bd. of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998). Normally, the current market rate is the rate at the time of the fee petition, not the rate when the services were performed. *See Lanni v. State of New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) ("To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed"); *Rode*, 892 F.2d at 1188–89 (describing petition based on current rates as premised on a theory of "delay compensation").

The Court may not reduce an award sua sponte. Reductions are only appropriate in response to specific objections made by the opposing party. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989). Once the opposing party has made a specific objection, the burden is on the plaintiff to justify the size and reasonableness of her request. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005). In reviewing a fee application, a district court must conduct a "thorough and searching analysis" to identify the charges. *See Evans*

*v. Port. Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001). Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar. *Blum*, 465 U.S. at 897.

## III.    DISCUSSION

The parties do not dispute that Plaintiff is a prevailing party, but they do dispute the reasonableness of Plaintiff's fee request. The Supreme Court in *Hensley* articulated 12 factors that relevant to this inquiry:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3.

As we noted at oral argument, the sum in this case is reasonable. Prosecuting this *Monell* action required considerable time and effort, including a 5-week trial; raised difficult factual questions; and required significant discovery and trial preparation which limited Plaintiff's counsel's ability to engage in other matters. We also agree with Plaintiff that the "undesirability" of the case is manifest, as Plaintiff has had many run-ins with the law that complicated the successful prosecution of this case, some as recently as a few months before trial. And as we discuss in greater depth below, the fee is reasonable when compared to similar cases and in light of Plaintiff's counsel's experience.

Thus, as a preliminary matter, we find that the fee award is largely reasonable and the *Hensley* factors are largely satisfied. Defendants raise a number of particularized objections—mostly presented in the form of cryptic, unsupported bullet-point-like statements in a large

spreadsheet attached to their opposition brief—that we will address one by one, although the Court has no obligation to entertain arguments not contained in Defendants' briefing. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); L. Civ. R. 7.2(a) ("argument of the facts and the law shall not be contained" outside of briefing and such arguments "will be disregarded by the Court").

Defendants argue, among other things, that the following items should be excluded from the lodestar: (1) hours expended on unsuccessful claims; (2) hours spent on deficient performance; (3) duplicative billings; (4) travel costs; (5) block billings; (6) administrative tasks; (7) hours spent on discovery used by other matters; and (8) plainly excessive hours. In addition, Defendants challenge Plaintiff's counsels' hourly rates, but because none of their arguments offer an alternative methodology for determining these rates, these arguments fail. Finally, Defendants seek a downward adjustment for limited success. Because some of the effort expended in this case concerned Officers Moore and Abrams, who were not found liable, the Court finds that a modest reduction of 10% is appropriate for this case.

### A. Hours Expended

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A district court should exclude hours that are not reasonably expended. *Id.* Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 919 (3d

Cir. 1985) (quoting *Hensley*, 461 U.S. at 440). The court also can deduct hours when the fee petition inadequately documents the hours claimed. *Hensley*, 461 U.S. at 433.

### 1. Unsuccessful claims

Defendants do not deny that Plaintiff won at trial, but still argue that Plaintiff should not receive a full recovery for fees relating to Abrams and Moore because Plaintiff's claims against them did not prevail. Although correct in a few narrow instances, Defendants forget the expansiveness of the municipal liability inquiry. Much of the evidence relevant to Abrams and Moore was relevant against both Atlantic City and Officer Devlin.

"A defendant should not 'be required to compensate a plaintiff for attorney hours devoted to the case against other defendants . . . who are found not to be liable.'" *Rode*, 892 F.2d at 1185 (citing *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978)). But attorney hours "'fairly devoted' to one defendant that also support the claims against other defendants who are found not liable are compensable." *Id.* The "extent of a plaintiff's success is a crucial factor in determining the proper amount on an award of attorney's fees" under 42 U.S.C. § 1988; where a plaintiff "has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440.

Plaintiff concedes that two items—a half-hour's worth of billing by a paralegal, Ms. Bagaloo, for summonses issued to AtlantiCare Regional Medical Center and to Dr. Erik Wolk on November 11, 2014, defendants later dismissed voluntarily from the case—should be excluded because they related to claims that Plaintiff voluntarily dismissed. For similar reasons, Bagaloo's half-hour November 14, 2014 preparation of summonses for Moore and Abrams are also properly excluded, as the jury found no cause of action against them. But the remaining items, set forth in

Defendants' Exhibit 1, are contested. One of these items, a March 1, 2015 billing for 5.5 hours of "Draft and file Brief in opposition to MTC," does not correspond with any docket entry in this matter, but review of the record indicates this was done in connection with grand jury proceedings concerning Officer Abrams. This evidence was used at trial, shed light on the incident at the heart of this case, and thus does not merit exclusion. The other items—depositions of Abrams, Moore, and various City officials and administrators; other efforts to obtain grand jury testimony; and review of internal affairs files—were relevant to the *Monell* claim against Atlantic City. Much of this evidence was presented at trial. Exclusion would be improper.

### 2. Deficient performance

Fees incurred as a result of the prevailing party's attorney's filing of deficient papers may not be recovered. *See, e.g.*, *T.B. v. Mount Laurel Bd. of Educ.*, 2011 WL 2473327, at *9 (D.N.J. June 20, 2011). Plaintiff concedes that the 4.5 hours that Ms. Bonjean spent re-working an overlength brief should be excluded from the lodestar.

### 3. Duplicative billing

Redundant hours should be excluded from the lodestar. *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001); *see also New Jersey Primary Care Ass'n, Inc. v. State of N.J. Dep't of Human Servs.*, 2013 WL 3288082, at *10 (D.N.J. June 28, 2013) ("the court must exclude duplicative billing for tasks which could not reasonably have required the identical expenditure of time by two partners."). Defendants argue that's what happened here in numerous situations where both Ms. Bonjean and her associate, Ms. Cohen, billed for the same event. Defendants appear to object to entries where Ms. Bonjean and Ms. Cohen both attended the same depositions, court appearances, and the like. But in such settings the Third Circuit has found that "awarding fees for [one partner's] time multiplied by an associate's rate may be justifiable." *Evans*

*v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001). As Plaintiff notes, only one partner (Ms. Bonjean) attended depositions, and the City itself often sent more than one lawyer to these. This billing, although duplicative, is not duplicitous.

We note as well that Defendants' spreadsheet is anything but clear on whether the items it has identified are actually duplicative. Some, such as the drafting of an amended complaint, do not appear to be duplicative at all. Plaintiff has nonetheless agreed, "in the spirit of compromise," to withdraw Ms. Bagaloo's hours, a sum of 10.76 hours. The Court also notes that at one six-hour deposition, Ms. Bonjean, Ms. Cohen, and Ms. Bagaloo all billed 10 hours, apparently inclusive of travel costs. While Ms. Cohen's presence may be reasonable, Ms. Bagaloo's is not—it is not clear why three people were needed at a deposition. These 10 hours will be excluded as well. Beyond that, however, Defendants' conclusory remarks—mostly made in an exhibit without reference to authority—have not sufficiently articulated which items are duplicative and fail to articulate a basis for exclusion.

### 4. Travel time and related expenses

Defendants argue "travel expenses of attorneys are not a taxable cost," apparently relying on, but wrongly citing, a case concerning a cost award pursuant to ERISA. *See Boyadjian v. CIGNA Companies*, 994 F. Supp. 278, 281 (D.N.J. 1998). Defendants are correct as far as this goes, but this is completely irrelevant to an *attorney fee* award under § 1988—traveling times are part of attorney fee awards. *See Planned Parenthood*, 297 F.3d at 267 (travel time is compensable when it is custom of attorneys in local community to bill clients separately for it). Defendants are thus mistaken that all the hours of travel must be excluded.

In their misplaced zeal to exclude travel time in its entirety, Defendants have failed to raise the issue of whether Plaintiff is only entitled to 50% of costs. It is their burden to do so. *See*

*Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("the district court cannot decrease a fee award based on factors not raised at all by the adverse party.") (citations and internal marks omitted). But Plaintiff has placed the issue before the Court preemptively. "The predominant trend in New Jersey is to reimburse travel time at 50% of an attorney's reasonable hourly rate." *Warner v. Twp. of S. Harrison*, 2013 WL 3283945, at *14 (D.N.J. June 27, 2013); *see also Daggett v. Kimmelman*, 617 F. Supp. 1269, 1282 (D.N.J. 1985) (travel time ordinarily should not be compensated at normal rate when time records were insufficient to show that legal work relating to case was performed during travel), aff'd in relevant part, 811 F.2d 793 (3d Cir. 1987).

Plaintiff argues that his counsel are entitled to the maximum rate for travel expenses. He has two principal arguments: (1) that the City refused to meet for depositions anywhere else and that Ms. Bonjean and Ms. Cohen were obliged to travel to Camden or Atlantic City, and (2) that Plaintiff was unable to secure local counsel despite repeated attempts to do so. (Pl. Br. at 18.) While there was an opportunity cost to the City's refusal to meet halfway for depositions in either Trenton or Newark, the City had no duty to do so. Moreover, these reasons do not answer the primary concern behind disallowing a maximum rate for travel time: Plaintiff's counsel likely did not do a full hour's work while traveling and the billings do not clearly indicate that she did.

In the table below, the Court has tallied all the instances that Defendants have challenged fees for travel times as being unreasonable. Plaintiff notes in his briefing that his counsel spent about four hours traveling from Brooklyn to Camden or Atlantic City and back again. We have applied this presumption below. Unless stated otherwise, all times are presumed to be from Brooklyn to South Jersey, and the Court imposes a 50% reduction on the four-hour round-trip travel time where the hours permit such a conclusion. Where Plaintiff's counsel traveled from

Philadelphia, the Court has assumed an hour-long commute, round-trip, with a 50% reduction of thirty minutes. All told, 35 hours of Ms. Bonjean's billable time will be excluded and 17.5 of Ms. Cohen's will be excluded.

| Date | Description | User | Hours | Deduction |
|---|---|---|---|---|
| 03/02/15 | Deposition (travel included) | Bonjean | 9 | -2 |
| 03/25/18 | Deposition (travel included) | Bonjean | 6 | -2 |
| 03/25/15 | Commuting to NJ | Bonjean | 3 | -1.5 |
| 05/12/15 | Conference (travel included) | Bonjean | 5.5 | -2 |
| 07/15/15 | Deposition (travel included) | Bonjean | 9 | -2 |
| 07/16/15 | Deposition (travel included) | Bonjean | 9 | -2 |
| 08/26/15 | Travel; deposition | Bonjean | 8 | -2 |
| 09/17/15 | Deposition (travel included) | Bonjean | 10 | -2 |
| 09/17/15 | Deposition (travel included) | Cohen | 10 | -2 |
| 10/07/15 | Travel & discovery hearing | Bonjean | 5.5 | -2 |
| 10/28/15 | Travel, deposition | Bonjean | 4.5 | -2 |
| 10/28/15 | Travel; deposition | Cohen | 4.5 | -2 |
| 11/23/15 | Travel; depositions | Bonjean | 8 | -2 |
| 11/23/15 | Travel; depositions | Cohen | 8 | -2 |

| 12/28/15 | Travel; depositions | Bonjean | 9.5 | -2 |
|---|---|---|---|---|
| 01/21/16 | Travel; hearing | Cohen | 7.5 | -2 |
| 04/08/16 | Travel; deposition | Bonjean | 8 | -2 |
| 04/15/16 | Deposition (travel included) | Cohen | 10 | -2 |
| 04/15/16 | Travel; deposition | Bonjean | 9 | -2 |
| 07/28/16 | Travel; hearing | Bonjean | 4 | -2 |
| 07/28/16 | Commuting | Cohen | 3 | -1.5 |
| 10/31/16 | Deposition (travel included) | Bonjean | 6 | -2 |
| 07/25/17 | Defendant's independent medical examination and travel | Cohen | 6.87 | -2 |
| 08/09/17 | Travel; hearing | Bonjean | 3.37 | -2 |
| 08/09/17 | Travel | Cohen | 3 | -1.5 |
| 10/16/17 | Travel | Cohen | 3 | -1.5 |
| 03/04/18 | Travel to Philadelphia; trial prep | Cohen | 8 | -0.5 |
| 03/04/18 | Travel to Philadelphia; trial prep | Bonjean | 13 | -0.5 |
| 03/08/18 | Travel to Philadelphia; trial prep | Cohen | 12 | -0.5 |
| 03/08/18 | Travel to Philadelphia; trial prep | Bonjean | 15 | -0.5 |
| 03/15/18 | Waiting on verdict; travel | Cohen | 8.5 | -2 |
| 03/15/18 | Waiting on verdict; travel | Bonjean | 8.5 | -2 |
| **Total hours reduced for Jennifer Bonjean:** | | | | **-35.00** |
| **Total hours reduced for Ashley Cohen:** | | | | **-17.50** |

5.  Insufficient documentation

Defendants challenge many entries as impermissible "block billing" that make it impossible to determine how much time was dedicated to each item. "Block billing is a time-keeping method by which each lawyer and legal assistant enters the total time daily spent working on a case, rather than itemizing the time expended on specific tasks." *Brown v. City of Pittsburgh*, Civ. No. 06-393, 2010 WL 2207935, at *8 n.12 (W.D. Pa. May 27, 2010) (quoting *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007)). But Defendants' argument that this is *per se* pernicious is misplaced: block billing "is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task" and such billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed. *United States v. NCH Corp.*, Civ. No. A. 05-881 SDW, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010) (citing *United States of America ex rel. Doe v. Pa. Blue Shield*, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999)). For these kind of objections, the "district court has a great deal of discretion to adjust the fee award." *Rode*, 892 F.2d at 1183; *see also Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) (noting that "the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires").

Plaintiff's counsel *does* block-bill in the literal sense of the term, but it is usually well-documented, can hardly be called vague, and does not raise the concerns that inhere to the term. To cite but one example, on December 1, 2015, Ms. Bonjean billed 9.5 hours for "Working through code book, adding and organizing variables while reviewing IA files, emailing with Jon Shane about variables and codebook." (Def. Ex. 5.) This is not particularly vague, and as "[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour

was devoted nor the specific attainments of each attorney," *Rode*, 892 F.2d at 1190, this and similar items should not be excluded from the lodestar on the basis of block-billing.

6.   Hours spent on basic tasks

Defendants argue, without reference to authority, that because Plaintiff practices in the field of civil rights litigation, it is excessive for her to research the notoriously-convoluted area of *Monell* liability and, instead, she should have known (or perhaps intuited) the law without devoting billable time to it. Defendants also argue, without reference to the record, that Plaintiff's counsel could have recycled some of these arguments in other Atlantic City litigation. Neither argument is persuasive. Litigants have an obligation under Fed. R. Civ. P. 11(b) to do some degree of preparation, including research, before they file documents with the Court, and "recycling" a brief is often inappropriate for the simple reason that every case is different. The Court will not exclude hours on this basis.

7.   The hours spent on shared discovery should be apportioned

Defendants next argue that the fee request for time spent on discovery should be reduced in proportion to use in other matters. Their briefing does not identify any instance in which Plaintiff has done so and at oral argument Defendants were unable to articulate *any* instance where this was the case. The Court rejected the argument, and we note as well that Plaintiff's counsel has stated, both in their papers and at oral argument, that they have not made a redundant fee petition. In short, Defendants' argument is completely unsupported. It does not justify exclusion from the lodestar.

8.   Plainly excessive hours should be reduced

Finally, Defendants argue that "excessive" fee requests should be reduced. Some of these are not apt for the Court to second-guess: Ms. Bonjean took thirty minutes to file an amended complaint, which as she explains included drafting documents. And as we have noted above, some

of Defendants' objections are well-founded concerns about overlong depositions which apparently included travel times. We reduced those times accordingly.

As for the other arguments: they are stated in what are essentially bullet points and can only briefly be discussed, for no argument is advanced in their favor. Defendants object to Plaintiff billing 92.62 hours (by Defendants' count) on work with an expert, Jon Shane, for two expert reports. The Court is uncertain how Defendants reached this sum and will not venture a guess as to the operation of this obscure arithmetic. Defendants similarly object to the length (8 hours) of the deposition of Sergeant Cupani and the 37.36 hours of work that went into this case's detailed Joint Final Pretrial Order. These objections are both unsupported and largely frivolous. Although it's unclear whether the Cupani deposition again includes travel time, it was not objected to on those grounds, and in any event eight hours is not altogether unusual for a deposition and its associated preparation. The time spent preparing the Joint Final Pretrial Order is similarly not facially unreasonable. *See, e.g.*, *Wade v. Colaner*, Civ. No. A. 06-3715-FLW, 2010 WL 5479625, at *7 (D.N.J. Dec. 28, 2010) ("the Court finds that it is indeed reasonable to expend 27.9 hours in modifying the pre-trial order and a portion of another 24.2 hours (part of block billing) reviewing the necessary materials."). We decline to exclude or reduce these hours.

Defendants also object to the length of time dedicated to the 78.42 hours spent by Ms. Bonjean and Ms. Cohen on the fee petition. This is lengthy, but this matter has been pending since 2013 and has engendered much confusion and contention during its life. Sorting out the fee petition was bound to take a considerable amount of time and Plaintiff's efforts in putting together a coherent document are helpful. Plaintiff notes, moreover, that the bulk of this work was done by Ms. Cohen, an associate attorney billing at a lower rate; although it could have been done more quickly by Ms. Bonjean, this would have been at a higher rate, at a possibly higher net fee. The

Court finds that the 78.42 hours dedicated to the preparation of the fee petition are not excessive under the circumstances.

9. Summary of hours

A modest deduction from the total hours is appropriate here. For Ms. Bonjean, 39.5 hours are reduced for her travel times and for filing an overlength brief. For Ms. Cohen, a reduction of 17.5 hours for travel time is appropriate. For Ms. Bagaloo, 1 hour for issuing summonses for unsuccessful claims, 10 hours for duplicative billing at a deposition, and 10.76 hours (as conceded by Plaintiff), should be excluded. That brings the total hours expended on this matter to 1,066.09 hours for Ms. Bonjean, 831.32 hours for Ms. Cohen, and 149.99 hours for Ms. Bagaloo.

**B. Hourly Rates**

Plaintiff requests the following rates in their petition for attorneys' fees:

Jennifer Bonjean ..................................................................................... $495/hour
Ashley Cohen ........................................................................................... $250/hour
Stacy Bagaloo .......................................................................................... $125/hour

The reasonable hourly rate is determined by reference to the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("We have consistently looked to the marketplace as our guide to what is 'reasonable.'"); *Interfaith Cmty.*, 726 F.3d at 413 (looking to prevailing rate in local forum and, where appropriate, counsel's place of business). The attorney's customary billing rate is the proper starting point for calculating fees. *Cunningham v. City of McKeesport*, 753 F.2d 262, 268 (3d Cir. 1985). "[T]he court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183. The party seeking to recover attorney's fees has the initial burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Lanni*, 259 F.3d at 149; *L.J. ex rel. V.J.*

*v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010). "The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive." *Glass v. Snellbaker*, Civ. No. 05-1971, 2008 WL 4416450, at *4 (D.N.J. Sept. 23, 2008) (quotations omitted); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000). However, an attorney's regular billing rate, while relevant, is not entirely dispositive. *See Public Interest Research Group of New Jersey v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

If this burden is met, the party opposing the fee award can rebut the reasonableness of the proffered hourly rate with record evidence. *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). If hourly rates are disputed with actual evidence rather than mere argument, the court must conduct a hearing to determine the reasonable market rates. *Id.* A district court may not set attorney's fees based upon "a generalized sense of what is usual and proper, but 'must rely upon the record.'" *Evans v. Port Auth.*, 273 F.3d 346, 362 (3d Cir. 2001) (quoting *Smith*, 107 F.3d at 225).

Plaintiff has presented ample support for the hourly rates of his counsel. Ms. Bonjean's rate of $495 an hour is her normal billing rate. (Bonjean Decl. ¶ 4.) And as Plaintiff has demonstrated, this rate is comparable to fees for local civil rights attorneys. Civil rights attorney Alan Lands, who has experience in this area, was recently awarded fees at a rate of $450 an hour in a 2017 case and believes the $495 charged by Ms. Bonjean is reasonable. (Lands Cert. ¶¶ 3–5.) Experienced civil rights attorney Christopher R. Smith was awarded $400 an hour in a 2012 decision; he also believes Ms. Bonjean's rate is reasonable. (Smith Aff. ¶¶ 14, 22.) These rates also comport with the Community Legal Services' ("CLS") fee structure for attorneys of Ms. Bonjean's experience. CLS's fee structure has been cited approvingly by the Third Circuit Task

Force on Court Awarded Attorney's Fees. *See Court Awarded Attorney Fees*, 108 F.R.D. 237 (3d Cir. 1986); for instances of Court reliance on the CLS fee structure *see, e.g.*, *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001); *Warner v. Twp. of S. Harrison*, 2013 WL 3283945, at *10 (D.N.J. June 27, 2013); *Rainey v. Philadelphia Housing Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993); *Swaayze v. Philadelphia Housing Auth.*, Civ. No. 91-2982, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992). Under the CLS's standard she would be entitled to fees in the $450–$510 range for her 19 years of experience. (*See* Pl. Mot. Ex. F.) The "Laffey" matrix, prepared by the U.S. Attorney's Office for the District of Columbia, also supports the fee request, with a rate range of $504–516 for attorneys of Ms. Bonjean's experience. (*Id.* Ex. I.) The Laffey matrix concerns D.C. rates, not those of New Jersey or Brooklyn (Plaintiff's counsels' home base), reducing its utility here. But since Plaintiff's request falls under this rate, it appears to be reasonable. Finally, Ms. Bonjean herself was awarded $450 in a § 1983 case before the Northern District of Illinois just four years ago, in a forum where the cost of both living and (presumably) litigating is lower. *See Degorski v. Wilson*, 2014 WL 6704561, at *7 (N.D. Ill. Nov. 26, 2014) (approving $450 for Ms. Bonjean and noting that "rates for lawyers in New York and New Jersey are, on average, higher than rates for lawyers in Chicago").

Ms. Cohen's rate is similarly supported by an affidavit by a civil rights lawyer. (*See* Aita Cert. ¶ 13.) Her three years of experience places her rate within the range set by CLS ($220–$255) and falls far under the rates proposed by the USAO's Laffey matrix ($315–$322). Ms. Bagaloo's paralegal rate of $125 an hour is unopposed, but it is worth noting it is lower than or within the fee ranges for paralegals set by both CLS ($115–$140) and the USAO ($154–$157).

Defendants argue Plaintiff's counsels' rates are unreasonable, although they do not challenge the rates for the paralegal. They offer instead a proposed hourly rate of $400 for Ms.

Bonjean and $200 for Ms. Cohen. They offer no record evidence in support, and that is enough to disregard their arguments. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 97 n.4 (3d Cir. 2006) ("it is not enough merely to contest the claimed hourly rate; rather, appellees must submit evidence of a different reasonable hourly rate."); *Smith*, 107 F.3d at 225 ("In the absence of such evidence, the plaintiff must be awarded attorney's fees at her requested rate.").

At oral argument, Defendants could point to no evidence suggesting that $495 an hour was an unreasonable rate. Instead, they repeated their arguments that the Lands affidavit showed a more experienced attorney getting $450 an hour. Of course, this affidavit also concluded that the $495 is reasonable, and that conclusion was not refuted with record evidence. Defendants' other arguments ineffectively impugn one affiant as unfamiliar with Ms. Cohen and the other as "foreign" to this forum, but as before, these contentions do not present an alternative basis for determining the reasonableness of the rates. The balance of Defendants' argument is dedicated to the proposition that CLS's fee schedule has no relevance across the river from Philadelphia. That's not entirely true: courts in this district have considered the CLS schedule before. *See, e.g.*, *Warner*, 2013 WL 3283945, at *10. But even if Defendants were correct in these assertions, Plaintiff's counsels' rates are lower than those established by the matrices. They are well within standard ranges and are, therefore, reasonable.

Defendants make two other strained arguments. First, they argue that many tasks—including legal research, depositions, and attending trial—should not be billed at attorney rates but rather the rates of a paralegal because they are tasks that "could easily have been accomplished by a paralegal or secretary." (Def. Br. at 12.) They reach this bold conclusion by relying on the following Third Circuit dicta:

> A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial

> time in court is neither fair nor reasonable. Many of these tasks are effectively performed by administrative assistants, paralegals, or secretaries. As such, to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable.

*Loughner*, 260 F.3d at 180. Taken on its own terms, this language could result in some absurd conclusions—if a lawyer cannot bill maximum rates for trial time, when can she?—and also invites legal malpractice, as a lawyer cannot delegate, say, trial time to a paralegal or secretary. In any event, Defendants' reliance on Third Circuit dicta is myopic. *Loughner* clearly stands for the proposition that a district court has "an obligation to evaluate the petition in light of the objections, and to explain why it accepted carte blanche the plaintiff's claim for time expended and rejected the [defendants]' objections." *Id.* at 179.  If Plaintiff's counsel had argued hours spent making binders or loading staplers entitled him to a lawyer's full rate, he would be wrong, and the Court would reduce the rate to a paralegal's rate (or, perhaps, lower). Ultimately, a task's "dollar value is not enhanced just because a lawyer does it." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (citation omitted). And had such a thing this happened here, Defendants would have a point.

But it didn't happen here. Defendants' Exhibit 6 enumerates 77 items—letters, legal research, depositions, the drafting and filing of motions, discussions with expert witnesses, document review, the attendance of hearings, and bringing Plaintiff Steven Stadler to an independent medical examination—which Defendants contend are "administrative in nature" and should be billed at a paralegal's rate. After careful review, not even one of these may be termed "administrative" in a sense of the term that allows "legal" to retain some meaning. A paralegal cannot research the law, depose witnesses, draft motions, or prepare expert witnesses for trial. There is no basis to reduce the rate for these items specifically.

Lastly, Defendants argue that Ms. Cohen should not be able to receive her hourly rate for time worked on this case prior to being admitted specifically to the New Jersey bar. This is without merit. *See, e.g.*, *Lanni*, 259 F.3d at 149 ("The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed.").

### C. The Lodestar

We can now calculate the lodestar. Ms. Bonjean's 1,066.09 hours multiplied by her hourly rate of $495 yields a total of $527,714.55. Ms. Cohen's 831.32 hours multiplied by $250 an hour yields $207,830. And Ms. Bagaloo's 149.99 hours multiplied by $125 an hour yields $18,748.75. This results in a lodestar of $754,293.30.

### D. Limited Success Reduction

Defendants argue that "the jury rejected Plaintiff's version of events in its entirety" and so the verdict—itself proof that the jury didn't reject Plaintiff's version of events "in its entirety"— should be subject to a 40% reduction, a number they appear to have chosen at random. As explained below, such a dramatic reduction does not appear warranted here, but the Court agrees this case merits a modest reduction of 10% because claims against Abrams and Moore did not prevail.

There are two primary measures used by courts to determine whether a plaintiff's success was limited. The first measure is the amount of damages received. Although a court may not reduce a fee award based on a proportionality analysis between the damages awarded and the fees requested, "[t]he amount of damages awarded, when compared with the amount of damages requested, may be one measure of how successful the plaintiff was in his or her action, and therefore may be taken into account when awarding attorneys' fees to a civil rights plaintiff." *Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996).

Accordingly, courts have limited the amount of fees significantly in cases where a plaintiff obtained small damage awards from juries in comparison to the amount sought. *See, e.g.*, *Posa v. City of East Orange*, 2005 WL 2205786, at *7 (D.N.J. Sept. 8, 2005) (reducing fee award from $104,000 to $40,000 where plaintiff sought several million dollars in damages but was awarded only $3,066); *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 551 (E.D. Pa. 2003) (reducing the fee award by 75% where plaintiff sought $300,000 in damages but was awarded the nominal amount of $1,000); *Hall v. Am. Honda Motor Co.*, 1997 WL 732458, at *4 (E.D. Pa. Nov. 24, 1997) (reducing award by ten percent where plaintiff sought damages in excess of $50,000.00 and received final judgment of $4,000.00). Courts have also reduced the lodestar where a plaintiff settled for a significantly reduced amount. *See, e.g.*, *D'Orazio v. Washington Twp.*, 501 F. App'x 185, 188 (3d Cir. 2012) (upholding finding of "limited success" where, *inter alia*, "Appellant settled for only 4.6 percent of damages originally sought"). Furthermore, it is permissible to consider evidence from settlement negotiations when determining the measure of success. *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009).

The second measure of success is whether some of the claims or one or more defendants were dismissed from the case. *See, e.g.*, *Dinizo v. Twp. of Scotch Plains*, Civ. No. 07-5327, 2010 WL 2880171, at *1 (D.N.J. July 19, 2010) aff'd, 421 F. App'x 173 (3d Cir. 2011) (reducing fees on the basis that, *inter alia*, "Plaintiff only prevailed on one of four claims at trial"); *McDonnell v. United States*, 870 F. Supp. 576, 588–89 (D.N.J. 1994) (reducing award by 60% where "plaintiff did not succeed on the majority of his claims"); *Warner v. Twp. of S. Harrison*, No. 09–cv–6095, 2013 WL 3283945, at *16 (D.N.J. June 27, 2013) (reducing fee award by 35% because multiple claims, and three of six defendants, were dismissed from the case). The Third Circuit has stated that considering claims which were dismissed before trial is an appropriate a factor in determining

a plaintiff's limited success. *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 423 (3d Cir. 1993).

In brief, if a plaintiff achieves only partial or limited success the district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.

The second measure is more apt here. Defendants are correct that Plaintiff had "limited success" in this case insofar as he did not prevail in his claims against Abrams and Moore. But a limited success reduction, at least the 40% deduction requested by Defendants, does not seem appropriate when Plaintiff prevailed in his primary claim against Atlantic City, a claim which is wrapped up in many of the same issues facing Abrams and Moore. The case was always against Atlantic City—the prolonged litigation, dozens of depositions conducted, and the lengthy trial time of this case were a consequence of the policy and practice arguments against the City. The claims against Abrams and Moore were a simple matter of testimony—who did what, and when— together with expert opinion as to the extent of injury. Evidence against the City, by contrast, was much more involved, although not all of Plaintiff's efforts prevailed or were germane to the verdict of the jury. The Court finds that a 10% reduction for limited success is appropriate here. Thus, the lodestar is reduced to $678,863.97 from $754,293.30.

Application of the other measure of "limited success" has a similar result. Defendants point out that Plaintiff's demand before trial was $1.4 million, inclusive of attorneys' fees. They argue that this is far in excess of what Plaintiff got at trial. However, this sum is relatively close to the sum of the lodestar and the verdict, and Plaintiff's counsel cannot be faulted for not being clairvoyant. And as Plaintiff's counsel has pointed out, if Defendants' fees of taking this case to trial are considered, it's a good deal less. Although Plaintiff's demand modestly overshot the sum

of the jury's verdict and the expected attorneys' fees, the difference does not justify greater than a 10% reduction to the lodestar.

### E. Costs

In this Circuit, there is a strong presumption that costs should be awarded to the prevailing party, and "'[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.'" *Reger v. Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (quoting *In re Paoli RR Yard PCB Litig.*, 221 F.3d 449, 468 (3d Cir. 2000)). The rationale behind this presumption is that the denial of costs is tantamount to a penalty. *Id.* at 288–289 (citing *ADM Corp. v. Speedmaster Packaging Corp.*, 525 F.2d 662, 665 (3d Cir. 1975)).

Despite this strong presumption, courts do not have unfettered discretion to grant costs under Rule 54(d) and their ability to grant costs is statutorily circumscribed. The United States Supreme Court has ruled that absent express statutory authorization, courts may reimburse only those costs which are enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Title 28 U.S.C. § 1920 has been narrowly construed to permit taxing of *only* the following costs:

1) Fees of the clerk and marshal;
2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
3) Fees and disbursements for printing and witnesses;
4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
5) Docket fees under section 1923 of this title;
6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees expenses, and costs of special interpretation services under section 1928 of this title.

The Supreme Court recently reinforced its *Crawford Fitting* holding in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560 (2012), in which § 1920(6)'s provision for the "compensation of

interpreters" was limited to the cost of oral translation. In denying the cost of document translation, the Court noted that its decision was "in keeping with the narrow scope of taxable costs." *Id.* at 2006.

In addition, this district's local rules govern the taxing of costs. Local Civil Rule 54.1(b) provides that

> Within 30 days after the entry of a judgment allowing costs . . . the prevailing party shall serve on the attorney for the adverse party and *file with the Clerk* a Bill of Costs and Disbursements, together with a notice of motion when application will be made to the Clerk to tax the same.

L. Civ. R. 54.1(a). (emphasis added). *See also Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 695, 697 n.2 (D.N.J. 2011) ("Local Civil Rule 54.1 requires that an application for costs be first filed with the Clerk of Court, whose decision may be subsequently appealed to the undersigned."), vacated on other grounds, 466 F. App'x 133 (3d Cir. 2012). The local rules also provide that

> Such Bill of Costs shall precisely set forth each item thereof, so that the nature of the charge can be readily understood, and shall be verified by the attorney for the applicant, stating that (1) the items are correct, (2) the services were actually and necessarily performed, and (3) the disbursements were necessarily incurred in the action or proceeding. *Counsel shall append to the verified Bill of Costs copies of all invoices in support of the request for each item.*

L. Civ. R. 54.1(b) (emphasis added).

Plaintiff's Bill of Costs—not so named, but so functioning—was not filed with the Clerk, but this requirement may be waived. *Cf. D'Orazio v. Washington Twp.*, No. CIV.A. 07-5097 JEI, 2011 WL 6717427, at *8 (D.N.J. Dec. 21, 2011) ("Although § 1920 provides that a Bill of Costs should be submitted to the Clerk of the Court, in the interests of judicial economy, this Court will resolve all issues of costs here."). But Plaintiff has not appended "copies of all invoices in support of the request for each item," and the Court is unable to make a number of determinations about the scope of the request. As we explain below, Plaintiff will need to provide such invoices to the

Court in order for it to determine the propriety of taxing some costs. Some items, however, are plainly not taxable as a matter of law.

1. Trial and Deposition Transcripts

Plaintiff seeks $57,353.49 in transcript costs—$24,760.50 in trial transcripts and the remainder for depositions. A party can be reimbursed for fees incurred for "necessarily obtained for use in the case." 28 U.S.C. § 1920. In addition, Local Civil Rule 54.1(g)(6) provides that

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal. Mere acceptance by the Court of a submitted transcript does not constitute a request. Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court. All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

The Court noted—but did not rule—at oral argument that the trial and deposition transcripts appeared to be "necessarily obtained for use in the case." *See Peters v. Del. River Port Auth. of PA. and NJ*, Civ. No. 91-6814, 1995 WL 37614, at *2 (E.D. Pa. Jan. 27, 1995) ("It is properly within the discretion of the trial court to tax costs for a daily transcript where the daily copies were 'necessarily obtained for use' in the case.") (quoting *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)); *see also United States v. Bayer Corp.*, Civ. No. 07-0001 (JLL), 2015 WL 12698451, at *4–6 (D.N.J. Dec. 28, 2015) (taxing costs for use of trial and deposition transcripts where "necessarily obtained" and directed by the Court). The Court also notes that Defendants' objections to these are overbroad and conclusory. They have not made any particularized objections and the Court cannot make such objections on their behalf. *See Montgomery Cty. v. Microvote Corp.*, Civ. No. A.97-6331, 2004 WL 1087196, at *5 (E.D. Pa. May 13, 2004) (finding that defendant failed "to offer any showing that the copies of the transcripts were unnecessary"

and that Plaintiff thereby "established that the daily copies were necessarily obtained for use in the case").

With respect to costs for deposition transcripts, many were used or relied on at trial. The mass of authority does not require a deposition transcript to be "absolutely indispensable" to be taxable as a cost. *See, e.g.*, *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000) ("the introduction of testimony from a transcript is not a prerequisite for finding that it was necessary."); *Indep. Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 717 (N.D. Ill. 1982) ("If a deposition appeared to be reasonably necessary 'in light of the particular situation existing at the time it was taken,' the cost of a deposition may be taxed even if the witness was not called at trial or the deposition used at trial and even if the deposition was a discovery deposition only.") (internal citations omitted) (citing *Dorothy K. Winston & Co. v. Town Heights Development, Inc.*, 68 F.R.D. 431, 434 (D.D.C. 1975)).

The defects of Defendants' objections are in a sense understandable, however. Plaintiff has not appended invoices to his Bill of Costs and thus Defendants' ability to scrutinize them is severely limited. The Court finds that before it can determine the necessity of taxing costs, Plaintiff must provide copies of invoices of these costs in accordance with the Local Rules and with Third Circuit precedent clearly requiring invoices that specify the cost and whether it was necessary. *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 166 (3d Cir. 2012) (disapproving invoices submitted in support of a Bill of Costs "for their lack of specificity and clarity as to the services actually performed").

2. Expert costs

Plaintiff also seeks $61,359.05 in expert-related costs, broken down as follows:

| Expert | Date(s) | Invoice |
|---|---|---|
| John Kirby | 5/25/17; 2/15/18; 2/27/18 | $6,141.50 |
| Jon Shane | 9/18/14; 6/14/16; 11/10/16; 2/16/18–2/18/18; 2/18/18–3/6/18; 4/15/16 | $37,420.24 |
| Van Bogardus | 3/6/18 | $13,978.00 |
| Yuval Braasch | 4/15/16 | $3,819.31 |

Plaintiff also seeks $955.66 in accommodations for one expert, Van Bogardus.

We note, initially, that "attorney's fees and expert fees are distinct items of expense" and may not be awarded under § 1988. *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 92 (1991); *see also Roccisano v. Twp. of Franklin*, No. CIV.A. 11-6558 FLW, 2015 WL 3649149, at *21 (D.N.J. June 11, 2015) (citing cases denying fees for preparation of expert report). As such, such expenses are only recoverable as costs under 28 U.S.C. § 1920. *See Garonzik v. Whitman Diner*, 910 F. Supp. 167, 170 (D.N.J. 1995) ("this court has no discretion to depart from the statutory witness fee.").

Costs for expert witnesses are provided for by statute. *See* 28 U.S.C. § 1821(a)(1) ("a witness . . . before any person authorized to take his deposition . . . shall be paid fees and allowances provided by this section."). Section 1821(b) allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Section 1821(c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," such as parking fees. Finally, § 1821(d) allows for a subsistence fee for a required

overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance. Section 1821 does not make any distinction between lay and expert witnesses.

The Court is presently unable to determine the applicable GSA rate[1] for time spent at depositions, as neither the invoices nor the locations of the depositions or Van Bogardus's accommodations are provided to the Court. Costs for expert witnesses and the accommodation of Van Bogardus are therefore denied. Plaintiff may submit a Bill of Costs to the Court so that it may scrutiny the propriety of taxing costs for these items.

3. Other costs

Plaintiff seeks $6,650.64 in costs for subpoenaed witnesses, but "[w]here a person was served with a subpoena, but did not testify at trial, the cost is not necessary and the party will not be reimbursed." *Roccisano*, 2015 WL 3649149, at *20. Of the individuals whose costs for subpoeanas Plaintiff seeks to recover, only a handful testified at the trial: Gregg Bumgardner ($164.99), Robert Carty ($59.99), Lee Hendricks ($15.00), Ernest Jubliee ($79.99), Edward Leon ($15.00), Robert Macready ($59.99), William Moore ($59.95), Edward Nistico ($15.00), Michael Oldroyd ($15.00), Bridget Pierce ($15.00), Diane Ruberton ($59.99), Frank Timek ($15.00), Greg Voci ($35.00), Sterling Wheaten ($15.00), and Eric Wolk (subpoenaed twice, for $84.99 and $59.95). As with the rest of the fee application, no invoices for costs were produced and the Court is unable to make a decision due to the paucity of the application. Costs will not be taxed for these subpoenas, although Plaintiff may present invoices if he seeks to recover on these.

---

[1] *See* General Services Administration, *Per Diem Rates*, https://www.gsa.gov/travel/plan-book/per-diem-rates (last accessed July 24, 2018).

Plaintiff also seeks recovery for "medical records," but Plaintiff's spreadsheet is too vague to determine what provision, if any, of § 1920 these could fall into. As for the technology expenses, office supplies, and expenses on Plaintiff's clothes and dry-cleaning, these are not within the parameters of 28 U.S.C. § 1920 and are not recoverable. And to the extent Plaintiff seeks recovery for expenses for hotel accommodations, these are also not taxable costs, except to the extent they are not provided for by 28 U.S.C. § 1821.

In brief, at this time no costs can be awarded. If Plaintiff submits an amended Bill of Costs with invoices, the Court will consider the application.[2]

### F. "Expenses" under § 1988

In addition to "costs" taxable under § 1920, the Third Circuit has held that certain "expenses" are to be construed as attorneys' fees under 42 U.S.C. § 1988. Such "litigation expenses" are recoverable under § 1988 "when it is the custom of attorneys in the local community to bill their clients separately for them." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). It is conceptually difficult to articulate a difference between non-taxable "costs" under § 1920 and "litigation expenses" under § 1988, as both are one-off expenses that appear to be properly labeled "costs." This distinction is in considerable tension with recent Supreme Court pronouncements on the narrow scope of taxable costs. *See Taniguchi*, 566 U.S. at 565 (explaining that 28 U.S.C. § 1920 was enacted in part out of a fear that "losing litigants were being unfairly saddled with exorbitant fees for the victor's attorney" and that taxable costs are accordingly quite narrowly construed). *See also* Wright & Miller, Federal Practice & Procedure § 2666 (3d ed.) ("absent a special statute or an exceptional exercise of judicial discretion, items such as attorney's

---

[2] Plaintiff should also direct his attention to the statutory and local authority on this matter and only submit requests for costs that are taxable within the meaning of 28 U.S.C. § 1920.

fees, travel expenditures, and investigatory expenses will not qualify either as statutory fees or reimbursable costs."). This conceptual difficulty is compounded by § 1988's plain language—a court, in its discretion, may award "a reasonably attorney's fee as part of the costs"—as well as the lodestar's treatment of attorney's fees as hourly wages—not one-off expenses. The statute and the case law's treatment of "attorney's fees" thus suggest that the "costs" mentioned by 42 U.S.C. § 1988 are indeed the same costs narrowly limited by 28 U.S.C. § 1920. If so, whatever is not an "attorney's fee" would consequently be a "cost" that is only recoverable under the six narrow categories established by Congress or if a statute establishes an exception to the rule.

Be that as it may, the Third Circuit's current guidance is that many expenses are "attorney's fees," not "costs," and as such travel expenses are recoverable "expenses" under 42 U.S.C. § 1988, along with telephone expenses, postage, and reproduction expenses. *Abrams*, 50 F.3d at 1225 (noting that "travel time and expenses of the attorney" are recoverable under § 1988). In addition, some authority supports awarding expenses for legal research to attorneys. *See, e.g.*, *Merck Sharp & Dohme Pharm., SRL v. Teva Pharm. USA, Inc.*, Civ. No. 07-1596 (GEB), 2010 WL 1381413, at *7 (D.N.J. Mar. 31, 2010) (opining that "expenses incurred for computerized legal research may still be recovered under other statutory provisions" such as 42 U.S.C. § 1988).

Plaintiff seeks $1,631.54 in fees related to Uber rides, $160 in courthouse parking fees, and $196.65 in gas. Although "travel expenses" are recoverable by a prevailing party under the Third Circuit's reading of 42 U.S.C. § 1988, courts typically require that such expenses be sufficiently documented in order scrutinize the necessity of travel to determine whether the expenses may be awarded under § 1988. *See, e.g.*, *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F. Supp. 2d 513, 531 (E.D. Va. 2010) (reducing costs for travel expenses "[i]n light of Plaintiff's failure to adequately demonstrate the necessity or reasonableness of these unnecessary

expenses."), aff'd sub nom. *Signature Flight Support Cor. v. Landow Aviation Ltd. P'ship*, 442 F.

App'x 776 (4th Cir. 2011); *Garner vs. Meoli*, Civ. No. A. 96-1351, 1998 WL 560377, at *5 (E.D.

Pa. Aug. 31, 1998) ("It is not possible, on the basis of the records submitted, for the Court to

determine the necessity of plaintiffs' counsel travelling to Pittsburgh."). As Plaintiff has not

submitted records shoring up the necessity of these expenses and many of them are not obviously

connected to the prosecution of this case, such as an Uber to dinner, the Court finds that only the

parking lot fees—clearly connected to the trial—are recoverable as part of an attorneys' fee award

under § 1988. $160 in "expenses" are awardable to Plaintiff pursuant to § 1988.

Plaintiff also seeks "expenses" for postage ($825.83), conference calls ($83.91), PACER

($613.20) and LexisNexis ($604.97). Under Third Circuit precedent these appear to be awardable

expenses under § 1988 as well, but as with costs, the Court will await invoices before awarding

"expenses" under § 1988.

### IV.     CONCLUSION

After a limited success reduction, Plaintiff is awarded $678.863.97 in attorneys' fees as

calculated by the lodestar. If Plaintiff seeks to recover costs or "expenses" awardable under § 1988,

he may submit an amended Bill of Costs with invoices and supplemental briefing of no more than

10 pages setting forth the nature of the requests.

Dated: __July 27, 2018__

ROBERT B. KUGLER
United States District Judge